UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MATTHEW FOGG**,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**PAMELA BONDI**,<br>Attorney General,[1]<br><br>　　　　　Defendant. | Case No. 24-cv-0792 (CRC) |

## MEMORANDUM OPINION

　　Former Deputy United States Marshal Matthew Fogg has spent decades litigating against the U.S. Marshals Service over alleged discrimination.  In 1994, he filed an administrative complaint against the Marshals Service with the Equal Employment Opportunity Commission ("EEOC"), asserting Title VII discrimination claims on behalf of current and former African American Deputy U.S. Marshals, and African American applicants for Deputy U.S. Marshal positions.  Nearly thirty years later, in 2023, the parties agreed to settle the complaint.  An EEOC Administrative Judge approved the settlement in June 2024, but its terms and conditions will not take effect until after any appeals of the settlement are exhausted and the agency's Office of Federal Operations approves the settlement.

　　Meanwhile, in March 2024, Fogg filed this putative class action, alleging that the class counsel in the administrative action did not adequately protect the class's interests before the EEOC.  Fogg also brings an individual retaliatory harassment claim.  The government responded with a motion to stay the case pending the Office of Federal Operations' approval of the

---

[1] The Court substitutes Attorney General Bondi in place of Attorney General Merrick Garland.  See Fed. R. Civ. P. 25(d).

administrative settlement, which Fogg opposed.  In May 2025, Fogg filed a motion for a preliminary injunction to halt the EEOC proceedings.  Another dissatisfied class member, Clarence Brown, filed a motion to intervene in this litigation shortly thereafter.  All three motions are fully briefed.  For the reasons that follow, the Court will deny Fogg's motion for a preliminary injunction, grant the government's motion for a stay, and deny Brown's motion to intervene.

**I.  Background**

   A.  Prior District Court Cases

In 1978, Fogg became a Deputy U.S. Marshal in Washington, D.C.  Fogg v. Gonzales, 492 F.3d 447, 450 (D.C. Cir. 2007).  In 1985, he filed an administrative complaint with the Marshals Service alleging racial discrimination because he had "received a harsh reprimand" and was transferred "ostensibly as punishment for having misused a government car."  Id.  From 1989 to 1992, while Fogg was assigned to a task force that tracked fugitives, he claimed to have faced discriminatory actions—including not receiving an expected promotion to the GS-13 level.  Id.

   Experiencing "severe psychological stress" as a result, Fogg stopped working in March 1993.  Id.  After the Marshals Service dismissed him for insubordination, Fogg brought a civil lawsuit.  Id.  A jury found that the Service had violated Title VII by subjecting Fogg to a racially hostile work environment from 1985 until his dismissal in 1995 and by discriminating against him on account of his race.  Id.  After several rounds of appeals and remands, Fogg ultimately obtained a judgment against the Marshals Service, including $300,000 in damages.  J., Fogg v. Gonzales, No. 94-cv-2814 (JAR) (D.D.C. Feb. 25, 2008) (ECF No. 8-1).

In 2018, Fogg pursued additional claims against the Marshals Service, alleging among other things that the Marshals Service had failed to properly implement the relief associated with the court judgment just referenced. See Am. Compl., Fogg v. Sessions, No. 18-cv-1075 (JEB) (D.D.C. Nov. 16, 2018) at 5–9. The court ultimately dismissed the case because Fogg failed to serve the defendants. See Min. Order, Fogg v. Sessions, No. 18-cv-1075 (JEB) (D.D.C. Nov. 28, 2018).

### B. EEOC Complaint

In July 1994, Fogg, then proceeding pro se, filed an administrative class complaint with the EEOC alleging that the Marshals Service discriminated against him and other African American Deputy U.S. Marshals based on their race. See Order Granting Prelim. Approval of Settlement Agreement, Fogg v. Garland, 1 No. 570-2016-00501X (E.E.O.C. Sept. 21, 2023), (ECF No. 8-6)[2]. In 1996, an EEOC AJ declined to certify the class complaint, citing a lack of specific information to support class certification. Id. at 1. Nearly ten years later, Fogg successfully petitioned the Commission's Office of Federal Operations to reopen the case. Id.

In 2006, the Commission overturned the 1996 dismissal of the class complaint and remanded the complaint to the EEOC's Washington Field Office for a decision on class certification. Id. After another round of appeals, in 2015, the Commission modified the class definition to include "African Americans who served in law enforcement or operational positions and were subjected to discrimination in recruitment, assignments, training and promotional opportunities" and remanded to the agency—directing Class Counsel to file an amended class complaint. Id. at 2.

---

[2] The name of the case was changed to Hedgepeth v. Garland, No. 570-2016-00501X (E.E.O.C.), following Fogg's removal as a class agent in May 2024.

In 2016, Administrative Judge ("AJ") Sharon Debbage Alexander granted counsel's motion to amend the complaint. Id. Following several years of discovery and motions practice, in 2020, Judge Alexander granted Class Agents' motion to again amend the class definition. Id. In early 2022, the parties reported they were engaged in settlement negotiations. Id. Then, in September 2023, Judge Alexander granted the class's unopposed motion for preliminary approval of a proposed class settlement agreement. Id. at 1. The agreement provides $15 million in monetary relief for the class, as well as non-monetary programmatic relief. Id. at 3.

The deadline to object to the Settlement Agreement was January 11, 2024. Class Compl. Notice of Resolution at 3, 10. And to request payment from the settlement, class participants were required to submit a claim form by January 26, 2024. Id. at 9. By submitting the claim form, a claimant also expressly released any and all claims he or she may have had against the Marshals Service. See Blank Claim Form & Release at 10. Fogg executed a claim form and release on January 25. See Claim Form & Release for Fogg.

A fairness hearing was scheduled to take place on March 20, 2024. See Order Granting Prelim. Approval of Settlement Agreement at 5. The day before, Fogg filed the complaint in this case, alleging that he was dissatisfied with the underlying administrative proceeding and the class's legal representation. See, e.g., Compl. ¶ 85. The complaint brings putative class claims of race discrimination, retaliation, hostile work environment, and harassment on behalf of a putative class, id. ¶¶ 92–111, as well as an individual claim of retaliatory harassment, id. ¶¶ 112–20.

Judge Alexander canceled the fairness hearing and ordered briefing from both parties on the impact of Fogg's federal-court filing. Order Retaining Jurisdiction Over Class Complaint & Removing Fogg as Class Agent (ECF 11-1) ("ALJ Decision") at 2. A few days later, the other

4

class agents filed a motion to remove Fogg as a Class Agent. Id. In its response to Judge Alexander's order, the agency expressed the position that "it appears that this matter should be administratively dismissed, with further proceedings to be held before the district court." Id. at 5. The class agents opposed, contending that the agency had the discretion to retain jurisdiction over the administrative class complaint under the applicable regulations. Id. at 6.

In May 2024, Judge Alexander issued an order retaining jurisdiction over the class complaint and granting the rest of the class agents' motion to remove Fogg. Id. at 1. Judge Alexander first explained that, as no final approval of the Settlement Agreement had yet been issued, Fogg's civil action was timely filed. Id. at 10. She then observed that two regulatory provisions cited by the Commission—29 C.F.R. § 1614.407 and § 1614.409—apply to appeals before the Commission, not class complaints at the administrative hearing stage. Id. Turning to the regulations governing administrative complaints, Judge Alexander reasoned that while the agency must dismiss an entire complaint "prior to a request for a hearing," following such a request, "the Commission intended something other than mandatory divestment of jurisdiction." Id.

Judge Alexander then concluded that "if there were ever a case where an administrative judge should exercise discretion to decline to dismiss a class complaint, this is it." Id. at 11. Crucial to that holding was Judge Alexander's finding that "it is clear from the record that Matthew Fogg did not have the authority or permission of the other Class Agents to move the class complaint to federal court." Id. She also relied on the fact that "the class complaint is thirty years along, already certified, and there are multiple other Class Agents already representing the interests of the class" who would have no recourse if the class complaint were to be dismissed. Id. at 11–12.

5

As a second, independent reason for declining to dismiss the class complaint, Judge Alexander observed that Fogg's district court complaint "does not make the same allegations as the class complaint; it is both overinclusive, and underinclusive." Id. at 12. For instance, Fogg dropped the administrative class's claims related to discrimination in hiring practices, id., while including several allegations "that have nothing to do with the pending class complaint," such as an individual retaliatory harassment claim, id. at 11–12.

After deciding to retain jurisdiction, Judge Alexander turned to the class agents' motion to remove Fogg from their ranks. Opining that Fogg's "eleventh hour federal district court filing purporting to terminate the Commission's jurisdiction over this thirty year old class complaint hours before a hearing on final approval of the Settlement Agreement, six months after the hearing was scheduled, and two years after the parties signed [a Memorandum of Understanding] outlining the terms of the Agreement" "demonstrated both poor judgment and a deep lack of consideration for the Class Members he purports to represent," Judge Alexander granted the motion. Id. at 14–15.

In June 2024, the EEOC granted final approval of the settlement between the class and the Marshals Service. Decl. of Christine Dunn ("Dunn Decl.") ¶¶ 6–7. There are two appeals pending before the EEOC challenging that final approval, including one filed by Fogg. Mot. to Stay at 7; Opp'n to Mot. for Prelim. Inj. at 3. The Marshals Service and Class Agents provided a settlement implementation plan to the EEOC in June 2025. Opp'n to Mot. for Prelim. Inj. at 3.

Also in June 2025, Clarence Brown, another member of the certified class, filed a motion to intervene as a plaintiff in this litigation, which the government opposes. That motion, along with Fogg's motion for a preliminary injunction and the government's motion to stay the proceedings, are ripe for the Court's consideration.

## II. Legal Standards

Beginning with Mr. Fogg's motion, "[a] plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Aamer v. Obama, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (alterations in original) (quoting Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011)). "[I]t is especially important for the movant to demonstrate a likelihood of success on the merits." Nat'l Head Start Ass'n v. U.S. Dep't of Health & Hum. Servs., 297 F. Supp. 2d 242, 247 (D.D.C. 2004) (citing Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 360, 366 (D.C. Cir. 1999)). A preliminary injunction is an "extraordinary" remedy and so "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2948 (2d ed. 1995)).

As for the government's motion to stay, "[a] trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere." Marsh v. Johnson, 263 F. Supp. 2d 49, 52 (D.D.C. 2003) (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). In considering a stay, courts must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." Belize Soc. Dev. Ltd. v. Gov't of Belize, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting Landis, 299 U.S. at 254–55). "In other words, hardship to the parties and benefits to judicial economy are the key interests to consider in evaluating a motion for a stay." Nat'l Indus. for the Blind v. Dep't of Veterans Affs., 296 F. Supp. 3d 131, 137 (D.D.C. 2017). "The

proponent of a stay bears the burden of establishing its need." Clinton v. Jones, 520 U.S. 681, 708 (1997) (citing Landis, 299 U.S. at 255).

Finally, as relevant to Mr. Brown's motion to intervene:  The Court must permit a party to intervene in a case if the party meets four requirements:  (1) it filed a timely motion; (2) it has a legally protectable "'interest relating to the property or transaction which is the subject of the action'"; (3) "'the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest'"; and (4) that interest will not be "'adequately represented by existing parties.'"  Fund For Animals, Inc. v. Norton, 322 F.3d 728, 731 (D.C. Cir. 2003) (quoting Fed. R. Civ. P. 24(a)).  The legally protectable interest required by the second prong of this test must be "'of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.'"  Defs. of Wildlife v. Jackson, 284 F.R.D. 1, 6 (D.D.C. 2012), aff'd in part, appeal dismissed in part sub nom., Defs. of Wildlife v. Perciasepe, 714 F.3d 1317 (D.C. Cir. 2013) (quoting United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1292 (D.C. Cir. 1980)).

Additionally, Federal Rule of Civil Procedure 24(b) grants the Court discretion to permit intervention by a party who "has a claim or defense that shares with the main action a common question of law or fact."  In evaluating such motions, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights,'" Fed. R. Civ. P. 24(b)(3), and may also consider "'whether parties seeking intervention will significantly contribute to . . . the just and equitable adjudication of the legal question presented.'"  Ctr. for Biological Diversity v. EPA, 274 F.R.D. 305, 313 (D.D.C. 2011) (quoting Aristotle Int'l, Inc. v. NGP Software, Inc., 714 F. Supp. 2d 1, 18 (D.D.C. 2010)).

### III. Analysis

A. <u>Fogg's Motion for a Preliminary Injunction</u>

The Court will begin with Fogg's motion for a preliminary injunction to enjoin all further action in the case before the EEOC, <u>Hedgepeth v. Garland</u>, EEOC Case No. 570-2016-00501X. Because Fogg cannot demonstrate a likelihood of success on the merits of his argument that the filing of this suit divested the EEOC of jurisdiction, the Court will deny his motion without considering the other factors for preliminary relief.

*1. The EEOC Is Not a Defendant to this Action*

As an initial matter, Fogg seeks injunctive relief against the EEOC, but the agency is not a party to this action. This Court is "'powerless to issue an injunction against' non-parties." <u>Hamilton v. Transp. Sec. Admin.</u>, 240 F. Supp. 3d 203, 205 (D.D.C. 2016) (quoting <u>Citizens Alert Regarding the Env't v. EPA</u>, 259 F. Supp. 2d 9, 17 n.7 (D.D.C. 2003)). Accordingly, Fogg's request for preliminary relief fails for that reason alone.

*2. The EEOC Did Not Lose Jurisdiction Over the Administrative Complaint*

Even assuming the Court had the power to order some relief in this case,[3] Fogg's assertion that the agency lost jurisdiction over the administrative class complaint when he filed this action appears incorrect. Fogg relies almost entirely on 29 C.F.R. § 1614.409. <u>See</u> Mot. for Prelim. Inj. at 4–6. That regulatory provision states: "Filing a civil action under § 1614.407 or §

---

[3] Once again, the Court doubts that it does. Fellow courts in this district have expressed "some reservation as to whether [they have] jurisdiction to review" decisions of the Office of Federal Operations on class action settlement agreements. <u>Rahman v. Johanns</u>, 575 F. Supp. 2d 132, 135 (D.D.C. 2008). In <u>Rahman</u>, the court noted that "[i]n the course of researching the issues involved in this case, the Court has found no case in which a federal district court reviewed the merits of an administrative settlement agreement resolving discrimination claims pursuant to 29 C.F.R. § 1614.204 or any other authority." <u>Id.</u> at 135.

1614.408 shall terminate Commission processing of the appeal. A Commission decision on an appeal issued after a complainant files suit in district court will not be enforceable by the Commission." 29 C.F.R. § 1614.409. If a suit is filed "subsequent to the filing of an appeal and prior to a final Commission decision," the complainant must notify the Commission. Id.

This provision does little to support Fogg's argument. It requires mandatory divestment of jurisdiction over an *appeal* of an agency decision to the EEOC. 29 C.F.R. § 1614.409. Here, Fogg filed this suit in March 2024, on the eve of the fairness hearing and prior to the AJ's final approval of the class settlement agreement. Other regulations govern the agency's jurisdiction under those circumstances, as Judge Alexander noted in her opinion retaining jurisdiction—specifically, 29 C.F.R. §1614.107(a)(3) and §1614.204.

Section 1614.107 provides that, "[p]rior to a request for a hearing in a case, the agency *shall* dismiss an entire complaint . . . [t]hat is the basis of a pending civil action in a United States District Court . . . ." 29 C.F.R. § 1614.107(a)(3) (emphasis added). Section 1614.204, in turn, provides that "[t]he administrative judge *may* dismiss the complaint, or any portion, for any of the reasons listed in § 1614.107[.]" Id. § 1614.204(d)(2) (emphasis added). Accordingly, the regulations indicate that following a party's request for a hearing, an administrative judge has the discretion to dismiss a complaint that forms the basis of a pending district court action. That contrasts with an administrative judge's nondiscretionary duty to dismiss such a complaint prior to a request for hearing.

And here, Judge Alexander exercised her discretion to retain jurisdiction over the complaint with good reason, including that Fogg "did not have the authority or permission of the other Class Agents to move the class complaint to federal court." ALJ Decision at 11. Moreover, Fogg's complaint here includes some claims brought only on an individual basis—for

10

example, his retaliatory harassment claim, Compl. ¶¶ 112–20, and drops other claims, including those alleging discriminatory hiring practices, ALJ Decision at 12.  Nor does Fogg contest this reasoning—his entire argument is that the Commission's regulations provide for mandatory divestiture of jurisdiction in these circumstances.  See Mot. for Prelim. Inj. at 4–6.  As just explained, they do not.

True, the final approval of the administrative class complaint has now been appealed to the EEOC.  But by that point, Fogg had been removed as a class agent and could not terminate the agency's jurisdiction.  See 29 C.F.R. § 1614.407 ("[A]n agent who has filed a class complaint . . . is authorized . . . to file a civil action[.]").

### 3. Fogg's Representation of the Putative Class

The government also argues that Fogg's claims on behalf of the class will fail because his interests are not aligned with the other members of the class.  Opp'n to Mot. for Prelim. Inj. at 6–7.  That does not appear to be directly responsive to the jurisdictional argument that is the basis for Fogg's motion.  Having moved past the jurisdictional issue, however, the Court agrees that Fogg's class-wide claims are unlikely to succeed because he cannot adequately represent the putative class members.  That only confirms the Court's decision to deny preliminary relief.

In his district court action, Fogg seeks to represent a class of "[a]ll current and former African American Deputy U.S. Marshals who are serving or have served with the [Marshals Service] at any time during the liability period."  Compl. ¶ 74.  The class covered by the EEOC administrative complaint includes "[a]ll current and former African American Deputy U.S. Marshals who were subjected to [Marshals Service] policies and practices regarding promotions under the Merit Promotion Process, Management Directed Reassignments, and Headquarters Division assignments."  Order Granting Prelim. Approval of Settlement Agreement at 2.  Thus,

11

the classes overlap, though Fogg's is broader.  Given that Fogg was removed as a class agent in the administrative proceeding because he took unilateral action to file a district-court complaint—without consulting and against the wishes of the other thirteen class agents, see Decls. (ECF No. 11-2)—the Court concludes it is unlikely that he will be deemed an adequate representative to bring claims on behalf of the class.  That is particularly so given the other class agents' assertion that Fogg filed this action to pursue his individual interests at the expense of the class.  Mot. to Remove Fogg as Class Agent (ECF No. 13-2) at 5–7.

### 4. Fogg's "Termination" of Class Counsel

Fogg also argues that the Commission's "continued recognition of terminated class counsel, despite their explicit termination by Mr. Fogg on November 1, 2023, requires immediate injunctive relief[.]"  Mot. for Prelim. Inj. at 7.  Yet Fogg offers no evidence demonstrating that he terminated class counsel, who have continued to represent the class before the EEOC.  See Dunn Decl. ¶ 3.  The Court also doubts that Fogg would have had the authority to do so unilaterally, even if he had tried, given that the thirteen other Class Agents appear satisfied with Class Counsel's services.  See Decls. Accepting Settlement Agreement (ECF No. 11-3).  Accordingly, this argument is unavailing.

For the reasons stated, the Court will deny Fogg's motion for a preliminary injunction.

### B. Motion to Stay

The Court turns next to the government's motion to stay these proceedings pending final approval of the administrative class settlement.  The government seeks a stay "because once the Office of Federal Operations rules on the Administrative Judge's approval of the Settlement Agreement, most, if not all, of Plaintiff's claims in this case will be barred by res judicata or related doctrines[.]"  Mot. for Stay at 9.

The government is correct that any claims resolved by the class settlement will be barred by res judicata. Under that doctrine, "once a claim is litigated and that litigation results in a final decision on the merits, be it by a motion for summary judgment, by a trial, or by a settlement between the parties resulting in a final judgment, the issue is decided permanently." Brown v. Wells Fargo Bank, N.A., 25 F. Supp. 3d 144, 148 (D.D.C. 2014). And "[a] class action settlement has the same preclusive effect as a prior individual action settlement if the moving party can show that the nonmoving party 'was adequately represented by a party who actively participated in the litigation.'" Id. (quoting Taylor v. Sturgell, 553 U.S. 880, 884 (2008)).

To be sure, if Fogg opted out of the class settlement, his claims would not be barred by res judicata. See id. at 148 ("[T]o establish that a plaintiff's claim is precluded under res judicata by a prior class action, a defendant must show that . . . the plaintiff in the instant action did not opt out[.]"). As the matter stands, however, in January 2024, Fogg executed a claim form seeking payment from the settlement and releasing all claims against the Marshals Service. See Claim Form & Release for Fogg. Fogg does not suggest otherwise. Instead, he explains that he "felt obligated to sign the Claim Form" because he knew "that a failure to sign could demonstrate he was not acting appropriately for the class." Opp'n to Mot. to Stay at 13. And he complains that the form was "disguised as a questionnaire" and "hides the substantial loss of rights within the boilerplate text of the otherwise interactive form." Id. But "[a]bsent a showing of fraud or duress, parties are bound by the agreements that they sign, without regard to whether they regret their decisions after the fact." Schmidt v. Shah, 696 F. Supp. 2d 44, 62 (D.D.C. 2010).

Thus, without deciding whether Fogg is bound by the release he signed, the Court concludes that "interests in judicial economy" favor a stay. Belize, 668 F.3d at 732–33. It

13

would be inefficient to proceed with litigation in this case only for the issue of Fogg's waiver to become ripe once the Office of Federal Operations approves the settlement agreement. Moreover, the potential "hardship to the parties" points in the same direction. Id. Fogg will suffer little hardship from waiting for EEOC approval of the settlement agreement, especially given that: (1) his jurisdictional argument, as already explained, is unavailing; (2) he is unlikely to be certified as an adequate representative of the putative class; and (3) his claims are likely barred by the release he signed. On the other hand, requiring the government to participate in discovery on claims that are ultimately likely to be barred or unsuccessful would impose unnecessary burdens. Cf. Steele v. United States, No. 1:23-CV-918 (RCL), 2024 WL 1111639, at *12 (D.D.C. Mar. 14, 2024) ("Permitting a 'class counsel in exile' to unleash parallel, duplicative litigation against a defendant is not in the interest of judicial economy, fairness to defendants, or sound judicial policy.").

Accordingly, the Court will grant the government's motion to stay pending final approval of the settlement agreement and will order the parties to promptly notify the Court following any such approval.

C. Brown's Motion to Intervene

Lastly, the Court turns to Clarence Brown's motion to intervene in the litigation.[4] He "is a retired African American Deputy United States Marshal with decades of dedicated federal service and a member of the certified class" in the administrative class action. Brown Mot. to

---

[4] In addition to moving to intervene in this matter, Brown attaches to his motion a proposed complaint. It is thus unclear to the Court whether Brown seeks only to join Fogg's putative class complaint as a named plaintiff or to litigate his own complaint in tandem with Fogg's.

Intervene at 1. Brown seeks either intervention as of right under Rule 24(a)(2) or permissive intervention under Rule 24(b)(1)(B). Id. at 3–4. He is entitled to neither.

Brown does not qualify for intervention as of right because the disposition of this action will not "impair or impede" a legally protectable interest "relating to the property or transaction which is the subject of the action." Fed. R. Civ. P. 24(a). As already explained, Fogg filed suit in this Court against the wishes of the rest of the class he purports to represent, so there is unlikely to be a "class of which Brown can be a part." Opp'n to Intervene at 4.

Moreover, the sparse factual allegations in Brown's proposed complaint do not seem to be related to Fogg's individual discrimination claims. Brown's opaque allegations include that he was "improperly placed at top of special assignment list contrary to policy" and "was assigned to a high-risk FEMA distribution point previously targeted by arson," as well as that he was denied unspecified promotions in retaliation for raising discrimination concerns. See Brown Proposed Compl. (ECF No. 16-3) ¶¶ 34, 35, 38. Fogg alleges different instances of retaliatory harassment, including a failure to properly adjust his worker's compensation benefits. Fogg Compl. ¶ 114. Thus, while Brown's claims may be similar in some respects to Fogg's, "the factual sufficiency of each claim would be assessed for each plaintiff . . . individually." Peters v. District of Columbia, 873 F. Supp. 2d 158, 218 (D.D.C. 2012). Accordingly, Brown has no legally cognizable interest in Fogg's claims and does not have a right to intervene.

The Court will also decline to permit Brown to intervene in this litigation under Rule 24(b)(1)(B) for largely the same reasons. Brown's and Fogg's claims "do not sufficiently share common questions of law or fact in common with each other or the main action that these claims could be efficiently considered together." Id. at 219. Based on the sparse allegations in Brown's

proposed complaint, "the fact remains that each [plaintiff] asserts particular individual circumstances." Id. at 220.

The Court will therefore deny Brown's motion to intervene.

## IV. Conclusion

For the foregoing reasons, the Court will deny Fogg's motion for a preliminary injunction, grant the government's motion for a stay, and deny Mr. Brown's motion to intervene. A separate Order accompanies this Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: July 1, 2025